**No. 25-1852**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DOVID AKIVA SHENKMAN,[1]

    Defendant-Appellant.

_____

On appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:24-cr-20668

_____

<u>**DEFENDANT-APPELLANT'S BRIEF ON APPEAL**</u>

By:   Law Office of Matthew S. Kolodziejski, PLLC
      Matthew S. Kolodziejski
      Attorney for Defendant-Appellant
      200 E. Big Beaver Road
      Troy, MI 48083
      (313) 736-5060

---

[1] Mr. Shenkman's legal name is Akiva Dovid Shenkman. However, in the district court he was incorrectly identified as Dovid Akiva Shenkman.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………… i

STATEMENT REGARDING ORAL ARGUMENT………………………...iv

STATEMENT OF JURISDICTION…………………………………………1

STATEMENT OF ISSUES………………………………………………...2

STATEMENT OF THE CASE…………………………………………….3

SUMMARY OF THE ARGUMENT…………………………………………16

STANDARD OF REVIEW………………………………………………….. 17

ARGUMENT

    I.    **Mr. Shenkman's sentence was procedurally and substantively unreasonable**………………………………………………………18

        **A. The district court failed to consider all non-frivolous arguments made by the defense at sentencing**………………. 18

        **B. The district court considered impermissible factors and speculative information**………………………….........................21

        **C. Mr. Shenkman was sentenced based upon inaccurate information regarding his criminal history**…………………..24

        **D. The district court failed to consider and give proper weight to the 3553(a) factors**………………………………..25

        **E. There was no basis to interfere with Mr. Shenkman's fundamental right to raise his own children**………………… 26

CONCLUSION…………………………………………………………… 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

## TABLE OF AUTHORITIES

**Cases**

*Lassiter v. Dept. of Soc. Servs. of Durham Cnty., N.C.*,
452 U.S. 18, 27 (1981) ……………………………………………………27

*McCurdy v. Montgomery County*, 240 F.3d 512, 517, 519 (6th Cir. 2001)…..25

*M.L.B. v. S.L.J.,* 519 U.S. 102, 116 (1996)………………………………... 26

*Pepper v. United States*, 562 U.S. 476, 480 (2011)………………………….. 22

*Rita v. United States*, 551 U.S. 338, 356 (2007)……………………………... 18

*United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017)…………………..22

*United States v. Banks*, 722 F. App'x 505, 511-12 (6th Cir. 2018)…………...20

*United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016)………………...21

*United States v. Carter*, 463 F.3d 526, 528-29 (6th Cir. 2006)……………… 27

*United States v. Collington*, 461 F.3d 805, 808-09 (6th Cir. 2006)………….. 20

*United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)………………..18

*United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015)……………...22

*United States v. Doyle*, 711 F.3d 729, 733 (6th Cir. 2013)…………………...28

*United States v. Fleming* 894 F.3d 764, 768 (6th Cir. 2018)………………… 22

*United States v. González-Castillo*, 562 F.3d 80, 83 (1st Cir. 2009)………… 23

*United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008)……………… 18

*United States v. Hatcher*, 947 F.3d 383, 394-96 (6th Cir. 2020)……………..24

*United States v. Holt,* 116 F.4th 599, 612–13 (6th Cir. 2024)………………... 17

i

*United States v. Inman*, 666 F.3d 1001, 1005 (6th Cir. 2012)………………….. 29

*United States v. Ivory,* 558 F. App'x 643, 643-44 (6th Cir. 2014)…………… 20

*United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001)………………...27

*United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)……………… 17

*United States v. Pineda*, 755 F. App'x 543, 548-49 (6th Cir. 2018)………….20

*United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)………………….21

*United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006)…………….. 18

*United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997)…………………... 27

*United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015)………………. 20

*United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021)…………………... 24

*United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010)…………………17

*United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006)……………….. 21

*United States v. Wright*, 529 F. App'x 553, 556 (6th Cir. 2013)…………….. 27

*United States v. Zobel*, 696 F.3d 558, 573 (6th Cir. 2012)…………………... 27

**Statutes and other authorities**

18 U.S.C. § 2252A(a)(1)……………………………………………………... 5

18 U.S.C. § 2252A(a)(2)……………………………………………………... 5

18 U.S.C. § 2252A(a)(5)(B)……………………………………………………5

18 U.S.C. § 3553(a)…………………………………………………….passim

18 U.S.C. § 3583(d)(3)……………………………………………………… 28

ii

28 U.S.C. § 1291…………………………………………………………….... 1

USSG § 2G2.2(a)(2)……………………………………………………..6

USSG § 2G2.2(b)(2)………………………………………………… 6

USSG § 2G2.2(b)(4)………………………………………………… 6

USSG § 2G2.2(b)(6)………………………………………………… 6, 7

USSG § 2G2.2(b)(7)(D)……………………………………………… 6

USSG § 5H1.3…………………………………………………………...20

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Sixth Circuit Rule 34(a), Defendant-Appellant requests oral argument to aid in the decisional process.

## STATEMENT OF JURISDICTION

This is a timely appeal of right taken from a judgment entered by the United States District Court for the Eastern District of Michigan on September 18, 2025. [Judgment, R. 43, Page ID 465-472]. A notice of appeal was filed on September 22, 2025. [Notice of Appeal, R. 44, Page ID 473]. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, which vests the circuit court with jurisdiction over "appeals from all final decisions of the district courts."

## **STATEMENT OF ISSUES**

I.      Whether Mr. Shenkman's sentence was procedurally and substantively unreasonable.

II.     Whether the district court failed to consider all non-frivolous arguments made by the defense at sentencing.

III.    Whether the district court considered impermissible factors and speculative information.

IV.     Whether Mr. Shenkman was sentenced based upon inaccurate information regarding his criminal history.

V.      Whether the district court failed to consider and give proper weight to the 3553(a) factors.

VI.     Whether there was a basis to interfere with Mr. Shenkman's fundamental right to raise his own children.

**STATEMENT OF THE CASE**

On November 24, 2024, Akiva Shenkman, who is a United States citizen, was crossing the international border from Ontario, Canada into Wayne County, Michigan at the Ambassador Bridge Port of Entry. Mr. Shenkman was driving a vehicle bearing a New Jersey license plate. He explained to border agents that he was returning to the United States from Canada after visiting a friend who recently completed the Talmud. Mr. Shenkman further informed the agents that he was crossing into Michigan so that he could visit the gravesite of his grandparents, and then meet with an individual for business purposes, before returning to his home in New York. [Presentence Report, R. 37, PageID 274, 276-277].

During their interaction with Mr. Shenkman, border agents were alerted to a Treasury Enforcement Communications System ("TECS")[2] record from Homeland Security Investigations, indicating that he was under investigation for a case from years earlier involving child sexual abusive material ("CSAM") in New York. Upon seeing this, Mr. Shenkman was referred to a secondary inspection, where he was interviewed by additional agents. Mr. Shenkman advised that he lived at a residence that he rented in Brooklyn, New York, and that he also spent time at his

---

[2] TECS is a screening process used by U.S. Customs and Border Protection and other agencies to identify potential threats, individuals with criminal histories, or those who may pose a risk to national security.

mother's home in Lakewood, New Jersey. He denied having any prior criminal history, and reiterated that the purpose of his visit to Canada was to visit and attend a party for a friend who had completed the Talmud. [Id. at PageID 276-277].

Agents observed that Mr. Shenkman was in possession of two cell phones, a Samsung S21 Ultra and an LG G8ThinQ. He informed them that one phone was his primary phone, and the second phone was used for music and GPS. Per the agents' request, Mr. Shenkman unlocked both phones for inspection using his biometric thumb print. One of the agents opened the "Telegram"[3] application on the first phone, and observed what appeared to be CSAM. A further review of the first phone showed what appeared to be conversations between Mr. Shenkman and other users in which CSAM was discussed and exchanged. A review of the second phone resulted in the discovery of additional CSAM. [Id. at PageID 277-279].

Mr. Shenkman was arrested and lodged at the Dearborn Police Department in Michigan. On November 25, 2024, Homeland Security Investigations agents obtained a search warrant for the two phones seized from Mr. Shenkman, along with two additional thumb drives that were found in his possession. A subsequent forensic extraction of files from the devices resulted in the recovery of numerous additional CSAM videos. [Id. at PageID 279].

---

[3] Telegram is an encrypted social media application where users can send messages, images, and videos using the internet.

On November 25, 2024, Mr. Shenkman was named in a criminal complaint in the Eastern District of Michigan alleging that he committed the offenses of distribution and receipt of child pornography, 18 U.S.C. § 2252A(a)(2), and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B). [Complaint, R. 1, PageID 1-6]. An amended criminal complaint was filed on November 27, 2024, alleging offenses of transportation of child pornography, 18 U.S.C. § 2252A(a)(1), and possession of child pornography, 18 U.S.C. § 2252A(5)(b). [Amended Complaint, R. 9, PageID 14-19]. On December 4, 2024, Mr. Shenkman was indicted on the charges contained in the amended complaint. [Indictment, R. 14, PageID 26-30].

Following his initial appearance, Mr. Shenkman was ordered detained prior to trial. [Order of Detention, R. 13, PageID 23-25]. A subsequent motion seeking his release on bond was also denied. [Order, R. 23, PageID 99-100]. On April 9, 2025, Mr. Shenkman appeared before the district judge for a hearing on yet another motion for bond, and, at the same time, for a scheduled change of plea hearing. [Plea Transcript, R. 34, PageID 155].

After a lengthy discussion between the court and counsel regarding the logistics of having both matters scheduled at the same time, the district court ultimately agreed to first entertain Mr. Shenkman's motion for bond. [Id. at PageID 156-168]. After hearing arguments from counsel, the district court denied the

motion for bond. [Id. at PageID 184-185]. The district court then inquired as to how the defense wished to proceed given its denial of the bond motion. Mr. Shenkman declined the district court's offer to adjourn the plea hearing, and stated that he wished to proceed with entering a guilty plea. [Id. at PageID 187-189].

During the plea colloquy the government informed the court that it offered Mr. Shenkman a Rule 11 plea agreement in which he could plead guilty to transportation of child pornography, and the charge of possession of child pornography would be dismissed. The proposed plea agreement also contained additional provisions, including a sentencing recommendation to the midpoint of the guideline range as well as an appeal waiver. Mr. Shenkman stated on the record that he was rejecting the Rule 11 plea agreement, and intended to plead guilty as charged. [Id. at PageID 193-195]. The district court then advised Mr. Shenkman of his rights, found there to be a sufficient factual basis, and accepted his guilty pleas to both counts of the indictment. [Id. at PageID 196-209].

The presentence report determined that the base offense level for the conviction offenses was 22. See USSG § 2G2.2(a)(2). The following sentencing enhancements were then applied: 2 levels pursuant to § 2G2.2(b)(2), 2 levels pursuant to § 2G2.2(b)(3)(E), 4 levels pursuant to § 2G2.2(b)(4), 2 levels pursuant to § 2G2.2(b)(6), and 5 levels pursuant to § 2G2.2(b)(7)(D). Following a 3 level reduction for acceptance of responsibility, the report calculated a total offense level

of 34 and a criminal history category of I, resulting in an advisory guideline range of 151 months to 188 months. [Presentence Report, R. 37, PageID 279-282].

Mr. Shenkman objected to the 2 level enhancement for use of a computer under §2G2.2(b)(6), but did not dispute that CSAM was recovered from his cell phones. Rather, in support of the objection he provided an opinion from a district judge in the Western District of Michigan, which explained why that court declines to apply the enhancement as a matter of course. [Sentencing Memorandum, R. 41, PageID 453-454]. The district court here addressed the objection and the opinion provided by the defense, but found the reasoning unpersuasive and overruled Mr. Shenkman's objection. [Sentencing Transcript, R. 47, PageID 539-547].

Mr. Shenkman raised two additional objections in response to the presentence report, both of which were also overruled. The first objection stated:

> "There is no way that Mr. Shenkman knowingly entered into this plea without the Rule 11 agreement."

The second objection stated:

> "The details of what exactly was on the phone or in the messages is unduly prejudicial to the Defendant. The information would be satisfactory simply stating that images and video which were child pornography. This would meet the elements of the crime without needlessly indicating the prejudicial information." [4]

> [Id. at PageID 539-547]

---

[4] This objection was in reference to paragraphs 20 through 22 of the presentence report, which detailed in rather graphic nature certain CSAM that was recovered from Mr. Shenkman's phones.

7

The district court was provided with significant information regarding the circumstances of the offenses, as well as Mr. Shenkman's personal history and characteristics. The presentence report noted Mr. Shenkman's lack of any prior convictions. However, it erroneously indicated that he was previously arrested in 2017, in connection with the New York investigation into alleged possession of CSAM. The report stated that in 2017, IP records were subpoenaed that resulted in a possible link between CSAM distribution and an address associated with Mr. Shenkman in Brooklyn, New York. [Presentence Report, R. 37, PageID 282-283].

The report noted that Mr. Shenkman's parents divorced when he was three years old, and he was primarily raised by his mother. His relationship with his father, who was often angry and abusive, was largely estranged following the divorce. Mr. Shenkman recalled his parents routinely fighting, and police responding on multiple occasions due to violence within the home. There were also indications that Mr. Shenkman may have suffered some form of abuse as a child. [Id. at PageID 283-285].

Mr. Shenkman attended Jewish religious schools from elementary through high school in Detroit, New York, New Jersey, and Chicago. He then attended yeshiva in Israel for several years before returning to the United States at age 18. Prior to his arrest in this case Mr. Shenkman had a steady employment history,

8

working as a self-employed and licensed HVAC technician in New York. [Id. at PageID 283, 285].

In addition to the presentence report, the district court was provided with the parties' sentencing memoranda, and reports that were completed by defense experts, Dr. Gerald Shiener, M.D.,[5] and Dr. Gavriel Fagin, Ph.D. [Defendant's Sentencing Memorandum, R. 38, PageID 299-321; Defense Sentencing Exhibits, R. 38-2, PageID 323-421; Government's Sentencing Memorandum, R. 40, PageID 437-452].

Dr. Shiener conducted a psychiatric evaluation and risk evaluation of Mr. Shenkman while he was in custody awaiting sentencing. After summarizing Mr. Shenkman's personal history, family, and health information, Dr. Shiener's report stated as follows:

> Mr. Shenkman grew up as an intimidated child withdrawn into fantasy with repressed emotions and repressed memories, professing to have limited recollection of his childhood experiences, and only being able to produce them when actively and aggressively confronted with the demand that he do so. This is a common reaction in individuals who grow up in a traumatic environment, and the most primitive line of defense is that of denial or "blocking out" memories of unpleasant experiences and uncomfortable affects. This tends to create an emotional "numbing" as described in the trauma literature. In an effort to overcome the emotional numbing, victims often become attracted to experiences of excitement - skydiving, auto racing, extreme sports, risk taking, and graphic sexual material. In the latter, excitement is not as closely associated with the risks of harm associated with other extreme physical endeavors. The arousal of graphic sexual material occurs remotely, without risk and in isolation.

[R. 38-2 at PageID 332].

---

[5] Dr. Shiener also submitted amended and supplemental reports. [Shiener Amended Report, R. 39, PageID 422-436; Shiener Supplemental Report, R. 42-1, PageID 459-464].

Dr. Shiener's report discussed the various instruments that were utilized to assess the relative risk that Mr. Shenkman posed to the community. These included the Hare Psychopathy Checklist, the Child Pornography Offender Risk Tool (CPORT), the Sexual Violence Risk Assessment (SRV-20), the Historical Clinical Risk Management (HCR-20). [Id. at PageID 328-331]

Based upon the results of this testing, Dr. Shiener concluded that Mr. Shenkman did not meet the criteria for paraphilia or pedophilia, and that he posed minimal to no risk to the community:

> He does not meet the diagnostic criteria for paraphilia or pedophilia, and by his descriptions all of his intimate contacts have been adult and heterosexual, and he has never acted on any of his interests. His interests do not seem to be specific or preoccupied in a paraphilic manner, but only the result of a quest to find material that would be "shocking" to arouse some feelings and to break through the defensive repression and denial.
>
> Based upon the examination I have performed and the documents I have reviewed, I would conclude that Akiva Dovid Shenkman is a chronically depressed victim of a rigid subculture with an unpredictably violent father who engaged in impotent rages and physical abuse. He has no history of violence, and no history of harm to others. He has never used his fists, an automobile, or a weapon to harm another person. He has never had a physical encounter in the "real world" with a sexually inappropriate object, and his primary goal in his limited attempts to establish intimacy have always been with adult women.
>
> He represents no risk to the community if provided the opportunity to engage in a therapeutic relationship. It is clear that he would benefit from such. His ability to tolerate aggressive confrontation during the course of his evaluation with me is also a good prognostic sign, and indicates that he is not likely to lose his composure or resort to violence when confronted or in a situation of desperation. His participation and involvement in a community that has close integration within the group as well as firm external controls that have to some extent been internalized by Mr. Shenkman is also a positive prognostic sign.

[Id. at PageID 333].

In addition to Dr. Shiener's report, the district court was provided with a report and assessment completed by Dr. Gavriel Fagin, Ph.D., which likewise

10

detailed Mr. Shenkman's personal history, upbringing, and relevant characteristics. The findings and recommendations from Dr. Fagin's report largely mirrored and concurred with those of Dr. Shiener. [Id. at PageID 335-353].

Based upon the record before the district court, the defense requested the mandatory minimum sentence of sixty (60) months. This request was based upon several arguments that were raised in Mr. Shenkman's sentencing memorandum and by his defense counsel at the sentencing hearing, including:

- The reports of Drs. Shiener and Fagin, which concluded that Mr. Shenkman did not meet the criteria for paraphilia or pedophilia and posed a low risk of recidivism;
- Mr. Shenkman was raised in a dysfunctional household, lacked the steady presence of his father, and was exposed to domestic violence;
- Mr. Shenkman was the victim of sexual abuse as a child;
- Mr. Shenkman suffered from neurodevelopmental disorder with cognitive and communicative deficits, consistent with trauma-related psychological distress;
- Mr. Shenkman was a non-contact offender and did not display predatory behavior;
- Mr. Shenkman's early development which "was marred by trauma, detachment, and difficulties with intimacy;"

11

·   Mr. Shenkman's significant family and community support;

·   Mr. Shenkman's lengthy history of maintaining productive employment;

·   Mr. Shenkman's lack of criminal history, acceptance of responsibility, and contrition.

[Sentencing Memorandum, R. 38, PageID 300-308, 316-319; Sentencing Transcript, R. 47, PageID 562-567].

During its sentencing allocution the government referenced several of Mr. Shenkman's online chats that were not part of the district court record, but instead appear to have been shown to the court in the middle of the sentencing hearing. The alleged nature of these chats, as described by the government, appeared to be disturbing. However, the record is unclear as to what exactly the district court was shown. [Id. at PageID 585-587].

When addressing the 3553(a) factors the district court stated that the chats and case materials were "among the worst of the worst." The district court stated:

> The stuff here, as described in the papers before me, is among the worst of the worst; violence, there's references in this stuff to animals. This is -- this is really difficult stuff, and that makes the transportation of that stuff very serious; and the possession of it.

[Id. at PageID 595].

Based on this information the court speculated that Mr. Shenkman's conduct resulted in encouraging other potential offenders, or getting them "revved up," to commit similar crimes. However, the record is devoid of any

12

evidence that this actually occurred.

> The chats, I don't know if those were technically part of the transportation or technically part of the possession, but they are certainly part of your history and characteristics. And this is what I was getting at with Mr. Jaffe, in terms of what concerns me; the chats were so graphic and so disturbing and so encouraging of antisocial assaultive behavior, that the nontechnical term I have for this is, getting people revved up. I mean, it's not too far of a leap to say that after one of these spirited text exchanges with you, somebody could have gone out and produced some of this stuff or done some of these acts. This was being encouraged. So even if it didn't actually get to that point, this revving up and creating more of an appetite for this horrible, horrible stuff, and encouraging others to be seeking this horrible stuff, all of that, to me, makes this a very serious matter.

[Id. at PageID 595-596].

The court acknowledged Mr. Shenkman's personality traits and positive lifestyle apart from his actions in this case, his family and community support, the religious component of his life, and his acceptance of responsibility and contrition. [Id. at PageID 596-598]. The court also found that the need for specific deterrence was low, stating "it's unlikely that you're going to do this again." [Id. at PageID 599].

The court then sentenced Mr. Shenkman to sixty (60) months on the transportation charge and a consecutive thirty-five (35) months on the possession charge, for a total of ninety-five (95) months. It also imposed ten (10) years of supervised release, which was double the minimum term. [Judgment, R. 43, PageID 465-472].

13

The court further ordered that Mr. Shenkman not have any contact with his own minor children, or reside in a home with minor children, without the permission of a probation officer. The entirety of those conditions state as follows:

> You must not have direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, including your own children, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

> He shall not provide care or live in a residence where children under the age of 18 also reside, without prior approval of the probation officer.

[Id. at PageID 469]

The district court included these special conditions of supervised release in the judgment, but never provided any rationale for depriving Mr. Shenkman of the fundamental right to have contact with his own children. The district court also did not consider or address several of the arguments that Mr. Shenkman's counsel made in support of a lower sentence, including:

· Mr. Shenkman was raised in a dysfunctional household, lacked the steady presence of his father, and was exposed to domestic violence;

14

- Mr. Shenkman suffered from neurodevelopmental disorder with cognitive and communicative deficits, consistent with trauma-related psychological distress;

- Mr. Shenkman's early development which "was marred by trauma, detachment, and difficulties with intimacy."

## SUMMARY OF THE ARGUMENT

Mr. Shenkman's sentence was procedurally and substantively unreasonable. The district court failed to consider all non-frivolous arguments that were raised by the defense in favor of a lower sentence, and instead considered impermissible factors and unsupported information that was not part of the record when weighing the offense conduct. Mr. Shenkman was also sentenced based upon erroneous information regarding his criminal history, where the presentence report falsely alleged a prior criminal arrest history.

The district court failed to properly consider and give adequate weight to all of the 3553(a) factors, resulting in a custodial sentence and term of supervised release that were greater than necessary. The court ordered that Mr. Shenkman have no contact with his own children, but provided no explanation for that decision. In doing so, it unjustifiably interfered with his fundamental rights to family association and to raise his children.

## **STANDARD OF REVIEW**

A district court must impose a sentence that is reasonable, both procedurally and substantively. See *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). A preserved claim that the sentence imposed was unreasonable is reviewed for an abuse of discretion. *Id*. An unpreserved challenge to the reasonableness of a sentence may be reviewed for plain error.  *United States v. Holt,* 116 F.4th 599, 612–13 (6th Cir. 2024). If reviewed for plain error, the defendant must show "(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

## ARGUMENT

### I.    MR. SHENKMAN'S SENTENCE WAS PROCEDURALLY AND SUBSTANTIVELY UNREASONABLE

A sentence is substantively unreasonable when "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

A sentence is procedurally unreasonable when, among other things, the district court fails to "adequately explain the chosen sentence." *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). When "a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007).

### A. The district court failed to consider all non-frivolous arguments made by the defense at sentencing

At sentencing the district court was faced with a defendant in Mr. Shenkman who had no prior criminal history, numerous positive characteristics, did not

engage in predatory behavior or physically assaultive conduct, and, even in the court's view, was very unlikely to re-offend. [Sentencing Transcript, R. 47, PageID 599]. Based upon these facts, in addition to others, the defense requested a sixty (60) month sentence.

To support that request it provided expert reports from Drs. Shiener and Fagin, which detailed Mr. Shenkman's family history, upbringing, and psychological condition. Armed with these reports, as well as additional information that was contained in the character letters attached to its sentencing memorandum, the defense raised three specific arguments in favor of mitigation that went unaddressed by the district court, specifically:

· Mr. Shenkman was raised in a dysfunctional household, lacked the steady presence of his father, and was exposed to domestic violence;

· Mr. Shenkman suffered from neurodevelopmental disorder with cognitive and communicative deficits, consistent with trauma-related psychological distress;

· Mr. Shenkman's early development which "was marred by trauma, detachment, and difficulties with intimacy."

[Sentencing Memorandum, R. 38, PageID 301, 305-306, 316-317].

By presenting these arguments at sentencing Mr. Shenkman has preserved this issue for appellate review, and this Court should review it under the abuse of

19

discretion standard. However, Mr. Shenkman would be entitled to relief even under a plain error analysis.

These arguments were significant and could have certainly formed the basis for a lower sentence had they been considered. See e.g. *United States v. Pineda*, 755 F. App'x 543, 548-49 (6th Cir. 2018) (noting that childhood trauma and mental health issues are relevant to sentencing and are often the basis for a variance); *United States v. Banks*, 722 F. App'x 505, 511-12 (6th Cir. 2018) (district court properly considered issues including defendant's difficult childhood); *United States v. Robinson*, 778 F.3d 515, 523 (6th Cir. 2015) (mental health issues can be compelling justification to support a significant downward variance); *United States v. Ivory,* 558 F. App'x 643, 643-44 (6th Cir. 2014) (sentence was substantively reasonable where court considered factors including defendant's difficult childhood); *United States v. Collington*, 461 F.3d 805, 808-09 (6th Cir. 2006) (below guideline sentence based in part on the defendant's upbringing was procedurally and substantively reasonable); USSG § 5H1.3 ("mental and emotional conditions may be relevant in determining whether a departure is warranted…").

The record is clear that the arguments were not addressed or considered by the district court. Certainly, there was no basis provided by the district court for rejecting them. Although a "ritualistic incantation" of the 3553(a) factors is not

20

required to affirm a sentence, *United States v. Williams*, 436 F.3d 706, 709 (6th Cir. 2006), the district court's general blanket statement here that it considered Mr. Shenkman's "personal history and characteristics" was insufficient to ensure that his <u>specific arguments</u> were considered and addressed:

> One of the obligations that I have is to make sure I respond to any basis on which you requested a downward variance. You had requested one based on the use of the computer, the two-point assessment. I'm not departing downward or varying downward on that basis. I gave all of my bases for the downward variance. You know, I tied it to, very much, his personal history and characteristics, the ability to secure the public and protect us with a lengthy term of supervised release. I explained the whole reasons for my sentence.

> [Id. at PageID 611-612]

Given the highly individualized and fact intensive nature of a criminal sentencing hearing, this blanket statement was insufficient to provide adequate assurances on appellate review "that the district judge considered the defendant's argument[s] and that the judge explained the basis for rejecting [them]." *Richardson*, 437 F.3d at 554.

## B. The district court considered impermissible factors and speculative information

A district court's reliance on impermissible factors or speculative information violates a defendant's right to due process and constitutes procedural error. *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016); see also *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (stating that procedural

21

reasonableness requires the court to "refrain from considering impermissible factors"); *United States v. Adams*, 873 F.3d 512, 517 (6th Cir. 2017). In *Adams*, this Court recognized "[t]he due-process right to be sentenced based on accurate information is not limited to information solely about the defendant's actions or criminal history." *Adams*, 873 F.3d at 518. To comply with due process, the district court's analysis of the 3553(a) factors must be based on accurate, reliable, and complete information that allows the district court to personalize its sentencing decision. Id.; *Pepper v. United States*, 562 U.S. 476, 480 (2011).

Procedural unreasonableness may also be found when facts relied upon by the district court came as a surprise to a defendant, resulting in his sentencing presentation being prejudiced. See *United States v. Fleming* 894 F.3d 764, 768 (6th Cir. 2018)*; United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015).

When describing the nature of the offense and Mr. Shenkman's personal history and characteristics, the district court relied heavily upon certain online chats in which the government claims Mr. Shenkman participated. The government presented printouts of these chats to the court at sentencing, and described them as being quite disturbing. Based on these chats the court concluded, without any evidence, that Mr. Shenkman's offense conduct had the effect of getting other potential offenders "revved up," i.e. encouraging other, to commit similar offenses.

22

However, this conclusion was pure speculation that was unsupported by any articulable fact. There was no evidence that Mr. Shenkman's involvement in these chats encouraged, or led any other individual to engage in, similar behavior. Further complicating the issue is the fact that these specific chats were not identified anywhere in the district court record, either by the court or government, thereby depriving this Court of the ability to effectively review this evidence.

The district court's reliance on this evidence was plain error that affected Mr. Shenkman's substantial rights. Absent this speculative finding that he engaged in conduct that encouraged others to commit serious CSAM offenses, there would have been a reasonable probability of a shorter sentence, particularly in light of the significant mitigation that was presented.

The district court focused significantly on these online chats, and described the act of allegedly getting others "revved up" as "a very serious matter." [Sentencing transcript, R. 47, PageID 596]. This was reversible error. "[B]asing a criminal sentence on a non-existent material fact threatens to compromise the fairness, integrity, or public reputation of [judicial] proceedings." *United States v. González-Castillo*, 562 F.3d 80, 83 (1st Cir. 2009) (finding plain error and remanding for resentencing based on the district court's "assumption of [an] unsupported fact").

23

### C. Mr. Shenkman was sentenced based upon inaccurate information regarding his criminal history

A defendant has a due process right to be sentenced on the basis of accurate information. *Adams*, 873 F.3d at 518. While the presentence report noted that Mr. Shenkman had no prior criminal convictions, it erroneously stated that in 2017 he was arrested for possession of child pornography following an investigation in New York. The description of that investigation that was contained in the arrest section of the report further implied that there was a significant basis to believe that Mr. Shenkman was guilty. [Presentence Report, R. 37, PageID 282-283].

Although the court "may accept any undisputed portion of the presentence report as a finding of fact," *United States v. Small*, 988 F.3d 241, 257 (6th Cir. 2021), the defense maintained both in its sentencing memorandum and at the sentencing hearing that Mr. Shenkman had no prior criminal record. This Court should, therefore, find that the defense did adequately dispute this portion of the presentence and preserve the issue for appellate review under an abuse of discretion standard. However, this Court has also found plain error when a district court relied upon mistaken criminal history at sentencing. *United States v. Hatcher*, 947 F.3d 383, 394-96 (6th Cir. 2020).

The inclusion of this inaccurate information was significant. It accused Mr. Shenkman of further CSAM activity dating back several years, thereby making his conduct in this current case part of a pattern. Further, the allegation of there being a

24

prior arrest falsely suggested to the district court that there was probable cause to believe that Mr. Shenkman did, in fact, commit this prior offense. This was a strong allegation that wrongly implied the existence of "concrete" and "articulable facts" from which guilt could be inferred. *McCurdy v. Montgomery County*, 240 F.3d 512, 517, 519 (6th Cir. 2001), abrogated on other grounds.

## D. The district court failed to consider and give proper weight to the 3553(a) factors

Mr. Shenkman presented numerous arguments both in his sentencing memorandum and at the sentencing hearing to support his request for the mandatory minimum sentence of sixty (60) months. Although the district court discussed the 3553(a) factors before imposing a sentence of ninety-five (95) months, Mr. Shenkman submits that on balance the relevant factors weighed heavily in favor of a lesser sentence.

When addressing the 3553(a) factors the district court appeared to give unreasonably little weight to its findings that Mr. Shenkman was unlikely to re-offend, and that the need for specific deterrence was low. When discussing his personal history and characteristics, the court also noted that apart from his involvement in these offenses, Mr. Shenkman was "an exemplary person" who was genuinely remorseful for his conduct. The court acknowledged his family support, lack of prior criminal convictions, employment history, and the religious component of his life. As mentioned, the court was also provided with additional

mitigating evidence contained in the reports of Drs. Shiener and Fagin, which detailed Mr. Shenkman's difficult upbringing, early trauma, as well as his neurodevelopmental disorder with cognitive and communicative deficits.

The court stated that the nature of the offense and the need for general public deterrence required a significant custodial sentence. Although Mr. Shenkman does not dispute that possession of child pornography is a serious matter, the court was also aware that no evidence existed to suggest that he ever physically touched, or even attempted to touch, a child, or otherwise engaged in predatory conduct. Further, a mandatory minimum sentence would have resulted in a significant period of incarceration that would provide a strong deterrent effect.

On balance, and even considering the district court's statements regarding the seriousness of the offense and need for general deterrence, Mr. Shenkman submits that both the custodial sentence that was imposed, and separately the ten (10) year term of supervised release, were greater than necessary.

### E. There was no basis to interfere with Mr. Shenkman's fundamental right to raise his own children

The United States Supreme Court has identified "family life, and the upbringing of children" as "among associational rights this Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." *M.L.B. v. S.L.J.,* 519 U.S. 102, 116 (1996) (internal citations and quotation marks omitted);

26

see also *Lassiter v. Dept. of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981) ("[T]he companionship, care, custody and management of [one's] children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection.").

Special conditions of supervised release that implicate parental rights are considered more intrusive and require explicit consideration by the sentencing court. *United States v. Wright*, 529 F. App'x 553, 556 (6th Cir. 2013); *United States v. Ritter*, 118 F.3d 502, 504 (6th Cir. 1997). This Court review reviews a special condition of supervised release for both procedural and substantive reasonableness. *United States v. Carter*, 463 F.3d 526, 528-29 (6th Cir. 2006). Procedural reasonableness requires the district court to state "its rationale for mandating special conditions of supervised release" at sentencing. *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001). Substantive reasonableness requires the condition to reasonably related to any specified 3553(a) factors. *United States v. Zobel*, 696 F.3d 558, 573 (6th Cir. 2012).

Here, the district court provided absolutely no explanation for the special conditions that prohibited Mr. Shenkman from living or having any form of association with his children, without the permission of a probation officer. Notably, these conditions also provide a probation officer with unfettered discretion to determine if Mr. Shenkman could have contact with his own children.

27

The lack of any safeguard or objective criteria to guide a probation officer was also unreasonable. Under this scenario, similarly situated defendants on supervised release could face completely different outcomes regarding their ability to associate with their children, based on nothing more than the subjective whim of their respective probation officers.

The conditions here should be contrasted with the special condition that requires a defendant who must register under SORNA to submit to a search at any time of his "person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media and effects" conducted by a law enforcement officer or a probation officer, with or without a warrant, if the officer has "*reasonable suspicion* concerning a violation of a condition of [supervised release] or unlawful conduct by the defendant." 18 U.S.C. § 3583(d)(3). This reasonable suspicion requirement provides an effective constitutional safeguard by requiring an objective and articulable basis that is not present in the special conditions at issue here.

In any event, the total absence of any explanation or justification for the restriction of Mr. Shenkman's fundamental rights to raise his children and familial association constitutes plain error and requires reversal under this Court's precedent. See *United States v. Doyle*, 711 F.3d 729, 733 (6th Cir. 2013) (district court erred by providing no explanation for the imposition of association

28

restrictions and other conditions for failing to register as a sex offender); *United States v. Inman*, 666 F.3d 1001, 1005 (6th Cir. 2012) (district court erred by failing to provide any explanation for imposing several special conditions).

## CONCLUSION

WHEREFORE the Defendant-Appellant, Akiva Shenkman, respectfully asks this Honorable Court to vacate his sentence and remand the case to the district court for resentencing.

Respectfully submitted,

/s/Matthew S. Kolodziejski
Law Office of Matthew S. Kolodziejski, PLLC
Matthew S. Kolodziejski (P71068)
Attorney for Defendant-Appellant
200 E. Big Beaver Road
Troy, MI 48083
Dated: December 29, 2025    (313) 736-5060

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,666 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully submitted,

/s/Matthew S. Kolodziejski
Law Office of Matthew S. Kolodziejski, PLLC
Matthew S. Kolodziejski
Attorney for Defendant-Appellant
200 E. Big Beaver Road
Troy, MI 48083
Dated: December 29, 2025    (313) 736-5060

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 29, 2025, I filed the foregoing document with the Clerk of the Court using the ECF System, which will send electronic notification to all counsel of record.


<u>/s/Matthew S. Kolodziejski</u>

## ADDENDUM

Defendant-Appellant designates the following relevant district court documents:

| Document Title | Record Number | Page ID |
|---|---|---|
| Complaint | 1 | 1-6 |
| Amended Complaint | 9 | 14-19 |
| Indictment | 14 | 26-30 |
| Plea Transcript | 34 | 151-212 |
| Presentence Report | 37 | 272-294 |
| Defendant's Sentencing Memorandum | 38 | 299-321 |
| Defendant's Sentencing Exhibits | 38-2 | 323-421 |
| Dr. Shiener Amended Report | 39 | 422-436 |
| Government's Sentencing Memorandum | 40 | 437-452 |
| Defendant's Sentencing Memorandum | 41 | 453-454 |
| Dr. Shiener Supplemental Report | 42-1 | 459-464 |
| Judgment | 43 | 465-472 |
| Notice of Appeal | 44 | 473 |
| Sentencing Transcript | 47 | 528-617 |